UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RASZELL REEDER,

                           Plaintiff,

 v.                                                      9:09-CV-520
                                                         (NAM/ATB)

M. HOGAN, et al,

                           Defendants.

RASZELL REEDER, Plaintiff, *pro se*
JUSTIN C. LEVIN*, Assistant Attorney General

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT AND RECOMMENDATION

    This matter has been referred to me for Report and Recommendation

pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c).[1]  In his

amended civil rights complaint, plaintiff sues myriad defendants,[2] alleging denial

---

    [1] The case was originally referred to the Honorable Gustave J. Di Bianco, but was re-assigned to me on January 4, 2010, following Judge Di Bianco's retirement.

    [2] M. Hogan, Commissioner of the Office of Mental Health; B. Fischer, Commissioner of the New York State Department of Correctional Services ("DOCS"); R. Roy, Inspector General; D. Artus, Superintendent, Clinton Correctional Facility ("Clinton"); T. Lavalley, First Deputy Superintendent of Clinton; S. Racette, Deputy Superintendent of Clinton; T. Brousseau, Supervisor of Grievance Program at Clinton; M. Bosco, Unit Chief at Clinton; J. Waldron, Unit Chief at Clinton; K. Bonner, Mental Health Worker at Clinton; G. Savage, Mental Health Worker at Clinton; D. Lucia, Lieutenant at Clinton; D. Uhler, Captain at Clinton; W. Allen, Lieutenant at Clinton; Archambault, Sergeant at Clinton; J. Ludwig, Sergeant at Clinton; K. Hicks, Sergeant at Clinton; Bezio, Sergeant at Clinton; Mareil, Sergeant at Clinton; Tetrault, Special Housing Unit ("SHU") Correction Officer at Clinton; Poupore, SHU Correction Officer at Clinton; Martin, SHU Correction Officer at Clinton; Bouyea, SHU Correction Officer at Clinton; Maccomb, Correction Officer at Clinton; Besaw, Correction Officer at Clinton; Finnel, Correction Officer at Clinton; R. Trudeau, Correction Officer at Clinton; Moseley, Correction

of medical care, excessive force, cruel and unusual punishment, and negligence. Defendants have moved do dismiss plaintiff's amended complaint for failure to state a claim, based on Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 69, 98).  Plaintiff responded in opposition to defendants' motions.  (Dkt. Nos. 73, 83, 102).  For the following reasons, the court recommends granting in part and denying in part defendants' motion to dismiss.

## I.      **Facts and Contentions**

Plaintiff was at Upstate Correctional Facility ("Upstate") in 2007 and then transferred to Elmira Correctional Facility ("Elmira") in 2008, where he participated in a group therapy program.  (Am. Compl. ¶¶ 13–15).  After about four weeks, plaintiff was transferred from Elmira to Great Meadow Correctional Facility ("Great Meadow") to participate in a different mental health program. (Am. Compl. ¶¶ 15–16).  Plaintiff alleges that upon his arrival at Great Meadow, he was "[i]mmediately harrassed [sic] and retaliated against because of [his] facility history."  (Am. Compl. ¶ 16, 39).  Plaintiff claims that he has been

---

Officer at Clinton; Stuart, Correction Officer at Clinton; John Does, SHU Correction Officers 1 & 2 at Clinton; B. Fitzgerald, SHU Nurse at Clinton; John Does, O.B.S. Witnesses 1 & 2 at Clinton; John Doe, O.B.S. Sergeant at Clinton; John Does, O.B.S. Correction Officers 1–3; John Doe, Mental Health Doctor at Great Meadow Correctional Facility ("Great Meadow"); Jane Doe, Director of the Behavior Health Unit ("B.H.U.") at Great Meadow; John Doe, Mental Health Worker at Upstate Correctional Facility ("Upstate"); John Doe, Block Mental Health Worker at Upstate; John Doe, O.B.S. Nurse; Howard, B.H.U. Sergeant at Great Meadow; and B. Larnan, SHU Nurse.

"deprived [of his] mental health treatment because of constant movement to different facility programs."  (Am. Compl. ¶ 18).

        While plaintiff was at Great Meadow, defendant Howard allegedly "got [plaintiff] relocated" to the "last cell and with feces in it" and told other correctional officers that when plaintiff was at Upstate, plaintiff had attacked defendant Howard's friend.  (Am. Compl. ¶¶ 16, 36, 39, 52).  Plaintiff had interacted with defendant Howard at Upstate and Downstate Correctional Facilities.  (Am. Compl. ¶ 52).  Plaintiff indicates that while he was a part of the Great Meadow B.H.U.[3] program, plaintiff was "given a new criminal charge," but gives no explanation as to the surrounding facts or its relevance.  (Am. Compl. ¶ 16).

        Plaintiff complained to defendant Hicks at Great Meadow that he was "never suppose[d] to be transfer[r]ed out of Elmira," but "she still did nothing except sent me to Clinton Correctional Facility [group therapy] program" later in 2008.  (Am. Compl. ¶ 17).  At Clinton, plaintiff "experienced constant assaults [and] wasn't fed for two daily meals[, and w]hile at O.B.S. [plaintiff] was extremely cold and in strong pain."  (Am. Compl. ¶ 28).  Plaintiff also complains of roaches and mice.  (Am. Compl. ¶ 29).  Overall, plaintiff asserts that the "threat

_____

        [3] Although plaintiff does not specify, B.H.U. may refer to "Behavioral Health Unit."

at Clinton was very threatening it forced [plaintiff] to not want to file any grievances."  (Am. Compl. ¶ 29).

Plaintiff alleges that on two occasions he asked for an Imam, and defendant Allen instead sent for a deacon, and plaintiff was also "denied my religious practive [sic] to eat ramadan meals" for the entire month when ramadan is celebrated.[4]  (Am. Compl. ¶ 29, 46).  Plaintiff "had to wait patiently and stop writting [sic] grievance[s] until the harrassment, [sic] and constant banging doors, gates and loud noises finally stop."  (Am. Compl. ¶ 37).

On July 10, 2008, plaintiff "committed a[n] aggr[a]vated assault charge," and was placed in "full restraints and assaulted in the back of [his] cell" at Clinton by unnamed defendants.  (Am. Compl. ¶¶ 20, 40).  After the incident, defendant nurse Fitzgerald evaluated plaintiff, but from behind the plexiglass shield in front of plaintiff's cell, which plaintiff alleges was "unclean" and "gives unclear vision."  (Am. Compl. ¶26).  Plaintiff allegedly received no treatment for his bruises, swelling, or the "excruciating pain [he] was constantly feeling."  (Am. Compl. ¶¶ 26–27).

The next day, plaintiff alleges that he was sleeping, and "correction officials

---

[4] Plaintiff claims in his Response to Defendants' Motion to Dismiss that he received one Ramadan meal during the month of Ramadan.  (p. 10).

entered my cell and placed a green state towel around my head and begin [sic] punching me in my face, my body and they kneed me and kicked me . . . [for] about three minutes.  I couldn't see who did it.  They told me if I snitch[ed] they [were] going to murder me."  (Am. Compl. ¶ 21, 40).  An unnamed sergeant and two corrections officers returned a few minutes later and began "punching [plaintiff], kicking [plaintiff], and kneeing [plaintiff]."  (Am. Compl. ¶ 22, 40).  A third officer stood at the door, holding it open.  *Id.*  After assaulting plaintiff for another three minutes, they "ran out the cell door."  *Id.*  Plaintiff alleges that the unidentified corrections officer who held the door also refused to feed plaintiff breakfast and lunch.  *Id.*

While plaintiff was still housed in the same cell, he alleges that defendants Uhler, Allen, Marcil, and other corrections officers wanted plaintiff to come out of his cell, but he "disagreed with coming out," because "they did not come with [a] camera."  (Am. Compl. ¶ 24, 41).  A "distraction unit" was called, bringing a camera, so plaintiff "agreed to come out," but defendants Uhler, Allen, Marcil and others still used mace "repeatedly."  *Id.*  Plaintiff was placed in full restraints, but the officers failed to lock the cuffs, which caused plaintiff "excruciating pain," and a corrections officer held plaintiff's "arm in an unproffessional [sic] way only intended to cause [plaintiff] extra excruciating pain and he used a[n] untrained

hold to apply pressure on my arms and wrist." (Am. Compl. ¶ 24, 42). Plaintiff received an eye examination by defendant nurse Larnan in the SHU "holding pen," but plaintiff received nothing for his bruises, "excruciating pain [he] was constantly feeling," or "swollenness [sic] from my head, face, chest, stomach, left leg, right leg and testicles." (Am. Compl. ¶ 27, 43; Pl.'s Resp. to Defs.' Mem. of Law in Supp. of Mot. to Dismiss the Am. Am. Compl. as to Defs. Farnan and Fitzgerald ¶ 1).

On January 5, 2009, plaintiff states that he was "forced to retaliate against a Sgt. and two correction officers for constant harrassment [sic] and constant retaliation . . . and because the administration at Clinton refuse[s] to proffessionally [sic] protect me." (Am. Compl. ¶ 28). The officers then submitted allegedly false reports stating that plaintiff's personal property inside his cell was also contaminated and needed to be destroyed. (Am. Compl. ¶ 51). Plaintiff's property was placed in a bag and destroyed due to a report indicating that it was "contaminated." (Am. Compl. ¶ 35). Plaintiff claims that only "one pair of state pants and short sleeve shirt, one pair of state sox, [sic] one pair of state undershirt and undershorts was contaminated and that was outside my cell at the back of the cell outside cell entrance." (Am. Compl. ¶51).

The state property that was destroyed was valued at $152.64, and plaintiff's

property, "five Vibe magazines, 1 bible, 7 personal letters, [and] 1 pair of slippers" were valued at $36.25.  (Am. Compl. ¶ 35).  The loss of his slippers prevented plaintiff from showering.  (Am. Compl. ¶ 35).  After plaintiff attempted to assault the officers on January 5, 2009, he claims he was placed "back in S.H.U. 2 cell" that only had a mattress with "huge holes and it was torn in many places."  (Am. Compl. ¶ 30).  Plaintiff alleges he was deprived of writing utensils, paper, grievances, envelopes, sheets, blankets, washcloths, soap, a pillow or pillowcase, towels, toilet paper, a toothbrush, toothpaste, and a sweatshirt.  (Am. Compl. ¶ 30).  Plaintiff claims that it took until January 23, 2009, for him "to receive most items back."  (Am. Compl. ¶ 30).

For ten days following the January 5, 2009 incident, plaintiff claims he went without food and then only received one meal a day for four more days.  (Am. Compl. ¶ 34, 50).  Plaintiff refused to eat during the final four days because "they spit in it or put dirt in it."  (Am. Compl. ¶ 34).  Plaintiff was "denied toilet paper for six days while they offer[ed] to feed me."  (Am. Compl. ¶ 47).  Plaintiff also felt cold because of a broken window that was not fixed until January 28, 2009.  (Am. Compl. ¶ 30, 47).  Plaintiff spoke to defendants Artus and Lavalley[5] on

---

[5] Plaintiff spells defendant Lavalley's name "Lavalle," but the Acknowledgement of Service (Dkt. No. 23) indicates that the proper spelling is "Lavalley."  The court will refer to this defendant as "Lavalley."

January 13, 2009, but "neither did nothing," telling plaintiff that "it's a security concern."  (Am. Compl. ¶ 34, 38, 47).  Plaintiff claims that "grievance investigations are not done proffessionally [sic]" or not investigated at all, and defendant Brousseau "neglects her responsibility" as I.G.P. Supervisor by "not using her powers . . . to enforce her authority against Clinton Correctional Facility Administration."  (Am. Compl. ¶ 38).

Plaintiff was not included in the group therapy program at Clinton in 2009, which plaintiff alleges is because "the grievance system never conduct proffessional [sic] investigations it has constant incomp[e]tents."  (Am. Compl. ¶ 19).  Plaintiff asserts that his exclusion from the Clinton group therapy program "has nothing to do with the criminal charge at Great Meadow."  *Id.*  Plaintiff also claims his mail has been tampered with, because he "never heard from grievance about the grievance [complaining of being denied ramadan meals] and correction officers began stealing my Vibe magazine subscription and it stop coming to me." (Am. Compl. ¶ 37, 53).

Plaintiff also complains of the "loudness of the very loose pipes banging against each other and against the wall," which causes plaintiff an "extreme amount of uneasiness," loss of concentration, and gives him migraine headaches. (Am. Compl. ¶ 31, 48).  Plaintiff alleges that his "mental health is constantly worst

[sic] and noone [sic] is helping me I have no other choice but to keep throwing feces and looking a[t] the people that walk bye [sic] that's [sic] responsible for not fixing these constant attacks when they were warned repeatedly.  My brain be [sic] getting angry."  (Pl.'s Resp. to Defs.' Mot. to Dismiss Compl. p. 11).[6]

Additionally, corrections officers allegedly "bang at the back of [plaintiff's] cell [on the] plexiglass that is called a bus stop[,] it's put there for disciplinary reasons."  (Am. Compl. ¶ 32, 49).  Plaintiff claims these "attacks" are retaliation for the July 10, 2008, July 11, 2008, and the January 5, 2009, incidents.  (Am. Compl. ¶ 32).  These incidents allegedly disturb plaintiff, make it difficult for him to sleep, constitute an invasion of his privacy, anger him, and were a contributing factor that "caused plaintiff to attack on 1/5/09 forcing Clinton administration to take notice to the abuse they pretend doesn't exist."  (Am. Compl. ¶ 32).  Plaintiff lists six occasions on February 6, 2009, and nine occasions from February 8, 2009, to February 16, 2009, when corrections officers were "banging" on the plexiglass at the end of his cell.  (Am. Compl. ¶ 32).  Plaintiff claims these types of activities "took place for . . . close to six months."  (Am. Compl. ¶ 45).

Plaintiff seeks a judgment in his favor, including substantial compensatory

---

[6] Plaintiff does not number the pages in his response, so the court will refer to the page numbers assigned by the CM/ECF system.

and punitive damages.  Plaintiff included three main headings in his fact section followed by a largely repetitive section entitled "claims for relief."  (Am. Compl. p. 15).  Defendants have construed plaintiff's claims liberally, grouping them under First Amendment Claims, Eighth Amendment Claims, and Other Claims in their memorandum of law.  (Defs.' Mem. of L. p. ii).  The court will analyze plaintiff's claims similarly to how they were outlined by defendants.[7]

Defendants also raise arguments based on a lack of personal involvement, as to certain defendants,[8] and the doctrine of qualified immunity, as to all defendants. For the reasons below, the court recommends granting defendants' motion to dismiss in part and denying it in part.

## II.   __Motion to Dismiss__

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its

---

[7] The court notes that plaintiff has named me as a defendant in a case recently filed in the Northern District of New York.  (*Reeder v. Allen, et al.*, Case No. 10-CV-959).  Although plaintiff has not moved for my recusal in this case, to the extent that it is necessary to discuss the issue, it is clear that "a judge is not required to recuse him- or herself simply because a litigant before the judge has filed suit or made a complaint against him or her."  *See Jenkins v. Sladkus*, No. 04 Civ. 1595, 2004 U.S. Dist. LEXIS 10320 at *4, 2004 WL 1238360 (S.D.N.Y. June 3, 2004) (citing *United States v. Nagy*, 19 F. Supp. 2d 139, 140–41 (S.D.N.Y. 1998).  Thus, notwithstanding plaintiff's attempt to name me as a defendant in *Reeder v. Allen*, No. 9:10-CV-959, there is no need for me to recuse myself in this action.

[8] Defendants move to dismiss the complaint as to defendants Hogan, Fischer, Bosco, and Waldron, arguing they were not personally involved in the alleged constitutional deprivations. (Dkt. No. 69).

face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62

F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

## III.   First Amendment Claims

Plaintiff makes four claims based on the First Amendment, each of which the court will consider in turn.

### A.   Retaliation

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants.  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action.  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary

12

firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003)) (omission in the original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* Even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.* (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977))

Plaintiff alleges that various defendants retaliated against him "because of [his] facility history," specifically by banging on the plexiglass at the back of his cell because of the incidents on July 10 and 11, 2008, and January 5, 2009. (Am. Compl. ¶ 16, 32, 49). Plaintiff does not allege any constitutionally protected speech or conduct related to his retaliation claims. Instead, he admits that he attempted to assault staff members on January 5, 2009. (Am. Compl. ¶ 30).

13

Assault, attempted or successful, is not constitutionally protected conduct on which a retaliation claim could be based.  Moreover, banging on the plexiglass at the back of plaintiff's cell would not deter "a similarly situated individual of ordinary firmness from exercising . . . constitutional rights," and hence would not constitute an "adverse action."  *Gill v. Pidlypchak*, 389 F.3d at 381.  Plaintiff's conclusory allegations that defendant Howard told "officers" that plaintiff had previously attacked defendant Howard's friend, and that defendant Howard is "completely responsible" for the attacks on plaintiff, are insufficient to establish a causal connection between his "facility history" and the incidents in July 2008. (Am. Compl. ¶¶ 36, 52).  Plaintiff has failed to allege facts that state a claim based on retaliation, and any such claims should be dismissed.

### B.    Free Exercise

Plaintiff claims that his rights under the First Amendment were violated when he was deprived of "Ramadan meals," and when defendant Allen twice sent for a deacon instead of an Imam, as plaintiff requested.  (Am. Compl. ¶¶ 29, 46, 53).  The First Amendment guarantees the right to the free exercise of religion. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  *Ford v. McGinnis,* 352 F.3d 582, 588

14

(2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). This right "is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security." *Johnson v. Guiffere,* 04-CV-57, 2007 WL 3046703, at *4, 2007 U.S. Dist. LEXIS 77239 (N.D.N.Y. Oct.17, 2007). The Free Exercise Clause extends "beyond mere attendance at congregate religious services into other aspects of prison life including, pertinently, that of an inmate's diet. . . ." *Id*. The Second Circuit has held that it is "clearly established that a prisoner has a right to a diet consistent with his or her religious scruples. . . ." *Ford,* 352 F.3d at 597 (citations omitted). Therefore, to "deny prison inmates the provision of food that satisfies the dictates of their faith . . . unconstitutionally burden[s] their free exercise rights." *McEachin v. McGuinnis,* 357 F.3d 197, 203 (2d Cir. 2004).

Plaintiff claims that he was denied meals during Ramadan, a holy month in Islam when observant Muslims fast between sun up and sun down.[9] *See generally Ford v. McGinnis,* 352 F.3d 582, 585 (2d Cir. 2003) (discussing the general aspects of Ramadan and some of the accommodations made by DOCS). Plaintiff has failed to indicate which defendants were responsible for the actual denial of

---

[9] It is unclear why plaintiff indicates he had a "Ramadan meal" after the end of Ramadan and at lunch time, as no Ramadan meal would be served in the period of fasting between sun up and sun down or after the month of Ramadan was over.

15

Ramadan meals,[10] and states that he "also" accuses Superintendent Artus, First

Deputy Superintendent Lavalley, and Deputy Superintendent of Security Racette

"for the violation of my rights," at the end of the paragraph indicating that plaintiff

did not receive his Ramadan meals.  (Compl. ¶ 29).  Plaintiff claims he gave a

grievance about his lack of Ramadan meals to Sergeant Archambault, the

"grievance sergeant," but his grievance did not reach the grievance office or the

Muslim chaplain.[11]  (Compl. ¶ 29, Pl.'s Resp. to Defs.' Mot. to Dismiss p. 10).

Plaintiff was later told by the Imam that he "wasn't on the mess hall list for

Ramadan or the Ramadan list in [the Imam's] office," despite the fact that plaintiff

"[has] Islam on the facility computer at Clinton.  *Id.*

Taking plaintiff's allegations as true, if plaintiff was refused Ramadan

meals for the entire month of Ramadan, the free exercise clause could be

---

[10] Plaintiff states that he was "on restricted diet for a disciplinary disposition when [he] got off," but does not explain when he was on the restricted diet, for how long, what a restricted diet is, or how it relates to his being denied Ramadan meals.

[11] Plaintiff does not "accuse" defendant Archambault in the paragraph of his complaint discussing the denial of Ramadan meals, but lumps defendant Archambault with defendants Artus, Lavalley, and Racette in his Response to Defendants' Motion to Dismiss.  Plaintiff does not allege that defendant Archambault denied him any meals, but only states that he lied about having plaintiff's grievances, which is consonant with plaintiff's description of defendant Archambault as the "Grievance Sergeant" of the S.H.U.  Therefore, plaintiff has failed to establish any personal involvement of defendant Archambault as to any denial of meals.  The court will consider plaintiff's allegations against defendant Archambault as they relate to plaintiff's grievances and mail tampering below.

implicated.[12]  However, plaintiff's allegations that defendants Artus, Lavalley, and Racette were generally informed of the food deprivation but failed to correct it are not enough to allege their personal involvement.  It is unclear how they were informed or aware of plaintiff's problems if plaintiff claims that his grievance regarding his denial of Ramadan meals never reached the grievance office, but plaintiff does not clarify.  Plaintiff simply states that Artus, Lavalley, and Racette were "aware" of things occurring at Clinton and failed to act.  (Pl.'s Resp. to Defs.' Mot. to Dismiss p. 10).

Plaintiff is essentially trying to establish personal involvement based on the supervisory role of defendants Artus, Lavalley, and Racette, which is inappropriate.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (holding that a position in a hierarchical command structure, without more, is insufficient to establish personal involvement).  Even if these defendants had received a letter

_____

[12] Plaintiff only mentions constitutional violations in his complaint, but his complaint may also be read to include a claim under the *Religious Land Use and Institutionalized Persons Act of 2000* ("RLUIPA"), which provides, in pertinent part, "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person– (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  Failure to cite a complaint in a statute "in no way affects the merits of a claim."  *Northrup v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997).  Because the court suggests granting defendants' motion to dismiss plaintiff's free exercise claim because plaintiff has failed to establish personal involvement, it is not necessary to analyze plaintiff's claim under RLUIPA.  However, if plaintiff amends his complaint, it may be necessary to analyze his claims under RLUIPA in future motions submitted to the court.

from plaintiff, it would be insufficient to establish personal involvement.  *See Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.") (citations omitted).

Although plaintiff uses the words "facility policy," he does not explain what this policy is and how it deprived him of his Ramadan meals.  Conclusory allegations are insufficient to state constitutional claims.  *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).  Complaints relying on civil rights statutes must contain some specific allegations of fact indicating a deprivation of rights, instead of a "litany of general conclusions that shock but have no meaning."  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (citing *inter alia Barr v. Abrams*, 810 F.2d at 363).  Plaintiff's mention of a list for Ramadan in the mess hall and with the Imam would indicate that Clinton does have a policy to provide for inmates who wish to observe Ramadan.  (Pl.'s Resp. to Defs.' Mot. to Dismiss p. 10).  In this case, plaintiff's allegations are not sufficient to establish personal involvement on the part of supervisory officials at Clinton.  Accordingly, defendants' motion to dismiss plaintiff's claims based on the free exercise clause should be granted.

18

### C.      Grievances

The law is well-settled that inmates do not have a constitutional right to grievance procedures.  *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *Davis v. Buffardi*, No. 0:01-CV-0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right") (citations omitted).  Furthermore, a violation of the inmate grievance procedures does not give rise to claim under section 1983.  *Cancel v. Goord*, No. 00 CIV. 2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).

Plaintiff alleges that Clinton's grievance process is "completely incopatent [sic]" and that defendants Artus and Racette delegate responsibilities to staff, whose investigations are "inadequate."  (Am. Compl. ¶¶ 29, 37, 38, 46, 53, 54). Plaintiff also complains that defendant Brousseau "constantly neglects her responsibility" as the supervisor of the Inmate Grievance Program.  (Am. Compl. ¶ 38). Even when accepted as true, plaintiff's allegations do not constitute a claim under section 1983, because plaintiff has no constitutional right to participate in an inmate grievance process.  Accordingly, plaintiff's claims based on alleged violations of the grievance process should be dismissed.

### D.      Mail Tampering

Plaintiff claims that unnamed DOCS employees tampered with his mail because his subscription to *Vibe* magazine was interrupted, and he did not receive answers to his grievances.  As discussed above, plaintiff has no constitutional right to participate in a grievance process.  As to plaintiff's magazine subscription, to state a claim for interference with non-legal mail, a plaintiff must establish a pattern and practice of interference without any legitimate penological interest.  *Cancel v. Goord*, 2001 WL 303713, at *6.  Plaintiff alleges that someone tampered with his mail because he did not receive *Vibe* magazine for six months.[13]  Taking plaintiff's allegations as true, failure to receive a magazine for six months could possibly establish a pattern or practice of mail tampering.  However, plaintiff has failed to name any particular defendant who was personally involved with tampering with plaintiff's mail.  Without more, plaintiff has failed to state a viable cause of action, and his claim based on mail tampering should be dismissed.

## IV.   <u>Eighth Amendment Claims</u>

---

[13] The court notes that *Vibe* magazine was apparently shut down in June 2009 until Spring 2010.  *See* http://www.vibe.com/subscription-inquiries/ (last visited August 20, 2010).  The magazine was apparently re-launched at the end of 2009 with plans to publish a print edition quarterly rather than monthly.  *See* Russell Adams, *Despite Ad Drought, Vibe Magazine to Relaunch with Digital Focus*, Wall St. J., Aug. 13, 2009, http://online.wsj.com/article_email/SB125002489881123763-lMyQjAxMDI5NTEwMTAxMjE0 Wj.html; *see also* http://www.vibe.com/mt/2009/11/uncovered-vibe-relaunch-issue/ (last visited August 20, 2010).   This may be the reason plaintiff stopped receiving his subscription, but plaintiff does not specify any date when he failed to receive the magazine.

20

Plaintiff makes four claims based on the Eighth Amendment, which the court will consider in turn.

## A.     Medical Indifference

Plaintiff claims that defendant nurses Fitzgerald and Larnan were deliberately indifferent to his medical needs because they did not examine or treat him appropriately.  He also asserts that he was deprived of mental health treatment because he was frequently transferred to different DOCS facilities.

### 1.     Legal Standards

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind.  *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

#### a.     Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the

challenged delay itself, rather than on the underlying condition alone.  *Id.* (citing *Smith*, 316 F.3d at 185).

### b.    Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind."  *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).  In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care.  *Id.* (citing *Farmer*, 511 U.S. at 835–37).  Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition.  *Id.*  Deliberate indifference is equivalent to subjective recklessness.  *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety.  *Id.* (citing *Chance*, 143 F.3d at 702).  The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference.  *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant

may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844.  Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted).  An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107).  Even if those medical judgments amount to

24

negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate.  *Id.  See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence not actionable under § 1983).  Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

### 2.   Application

#### a.   Defendants Fitzgerald and Larnan

Plaintiff takes issue with defendant nurse Fitzgerald examining plaintiff on July 10, 2009, "at the back of my cell while standing behind a cell shield pexiglass [sic]," because it "gives unclear vision" and plaintiff "never received treatment for [his] bruises and [swelling]."  (Am. Compl. ¶ 26).  Plaintiff also complains that defendant Nurse Larnan did not give plaintiff anything for his bruises, swelling, or "excruciating" pain on July 11, 2009.  (Am. Compl. ¶ 27).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly

affects an individual's daily activities; or (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702–03. Taking plaintiff's allegations as true, he alleges that the nurses failed to treat him for bruises, swelling around his "head, face, chest, stomach, left leg, right leg and testicles," and "excruciating pain I was constantly feeling"—which might qualify as an objectively serious medical condition. (Am. Compl. ¶ 27, 43; Pl.'s Resp. to Defs.' Mem. of Law in Supp. of Mot. to Dismiss the Am. Compl. as to Defs. Farnan and Fitzgerald ¶ 1).

Given plaintiff's history of assaulting, and even throwing feces at the staff, it is far from clear that a nurse would be acting unreasonably by examining plaintiff from behind a plexiglass shield. However, if, as plaintiff claims, he received no care or treatment after being observed by Nurse Fitzgerald and/or Nurse Larnan, one could find they were deliberately indifferent to his serious medical needs. Accordingly, defendants' motion to dismiss should be denied as to defendants Fitzgerald and Larnan.

### b.    Purported Deprivation of Mental Health Treatment

Plaintiff claims that, because he was moved to several different facilities, he was "deprived" of his mental health treatment. (Am. Compl. ¶ 18). It is well-settled that an inmate has no right to incarceration in any particular facility. *See Wilkinson v. Austin*, 545 U.S. 209, 221–222 (2005) (citing *Meachum v. Fano*, 427

U.S. 215, 225).  In *Wilkinson*, the court stated that confinement in any one of a state's institutions is within the normal range of custody which the conviction has authorized that state to impose.  *Id.* at 222.  In regards to which mental health program plaintiff preferred, mere disagreement with prescribed treatment does not rise to the level of a constitutional claim.  *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d at 31.  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates.  *Id.* (citations omitted).  An inmate does not have the right to treatment of his choice.  *Dean v. Coughlin*, 804 F.2d at 215.  The fact that plaintiff might have preferred an alternative treatment, or believes that he did not get the medical attention he desired, does not rise to the level of a constitutional violation.  *Id.*

Plaintiff was in the mental health unit at Upstate in 2007, was sent to Elmira to participate in a mental health program for four weeks in 2008, and then sent to the Great Meadow B.H.U.  (Am. Compl. ¶¶ 13–17).  At Great Meadow, plaintiff complained to the B.H.U. Supervisor, defendant Hicks, that he was "not suppose[d] to be in the B.H.U. program and . . . [plaintiff] was never suppose[d] to be transfer[r]ed out of [the] Elmira G.T.P. program."  (Am. Compl. ¶ 17).  Plaintiff was then transferred to the Clinton G.T.P. program.  *Id.*  It is evident that plaintiff was getting mental health treatment in the different facilities in which he is

housed.  Plaintiff's allegation that he was "deprived" of his such treatment is conclusory, disingenuous, and should be dismissed.

### B.      Excessive Force

Plaintiff alleges that various corrections officers and a "distraction" unit used excessive force against him on July 10 and 11, 2008.

### 1.      Legal Standards

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights.  *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).  To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency.'"  *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9. "[T]he malicious use of force to cause

harm constitute[s][an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10 (citations omitted). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a

forceful response."  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

### 2.    Application

Plaintiff alleges that, after he committed an aggravated assault on July 10th,

he was put in full restraints and "assaulted" in the back of his cell by unnamed

defendants.  (Compl. ¶¶ 20, 40).[14]  Having failed to identify anyone who is

personally involved with this incident, this claim should be dismissed, without

prejudice.[15]

As to the various incidents on July 11, 2008, plaintiff fails to identify the

correction officers who allegedly punched, kicked, and kneed him.  Having failed

to name anyone who was personally involved, claims relating to these incidents

should also be dismissed without prejudice.

---

[14] In paragraph 20, plaintiff alleges that, after the incident, he was taken from his cell and sent to an observation cell.  The last sentence of the paragraph states that defendants Hogan, Bosco, and Waldron were "responsible."  Defendant Hogan is the Commissioner of OMH and defendants Bosco and Waldron are "unit chiefs."  Moreover, paragraph 40 of the amended complaint seems to identify "John Doe" correction officers as being directly responsible for this alleged assault.  Accordingly, it appears that plaintiff has not identified the individuals who were directly involved in the alleged assault and that he has improperly named defendants Hogan, Bosco, and Waldron in connection with this incident based merely on their supervisory positions.

[15] Judge Di Bianco's October 2, 2009 text order stated:   "In the event that plaintiff wishes to pursue his claims against any of the John/Jane Doe defendants included in the complaint, plaintiff must take reasonable steps to ascertain his/her identity. Upon learning the identity of any Doe defendant, plaintiff may move to amend the complaint to properly name the Doe defendant. Failure to identify and serve any of these defendants in a timely manner may result in their dismissal."  *See Reeder v. Hogan*, Case No. 9:09-CV-520, Text Order, October 2, 2009.  Plaintiff thereafter amended his complaint on January 4, 2010, without naming many of the John/Jane Doe defendants.  Although the claims against these unnamed defendants should be dismissed, plaintiff may be afforded another opportunity to amend his complaint to name them.

Plaintiff claims that officers Uhler, Allen, Marcil, and O.B.S. Sergeant "John Doe" used mace against plaintiff, later on July 11th, solely to harm him. Even after he "agreed to come out" of his cell and "complied" by "placing [his] hands through the slot," they still used mace, which may constitute a malicious use of force that rises to the level of an Eighth Amendment violation.  Liberally construing plaintiff's complaint to make the strongest arguments it suggests,[16] plaintiff has successfully alleged a claim that is plausible on its face based on excessive force against defendants Uhler, Allen, and Marcil.  Accordingly, the court will recommend denying defendants' motion as to those defendants.

### C.  Failure to Protect

Plaintiff claims that *he* "was forced to retaliate . . . because the administration at Clinton refuse[s] to proffessionally [sic] protect me."  (Am. Compl. ¶ 28).  Plaintiff appears to be trying to make a claim of liability as to supervisory employees, but does no more than accuse Clinton's administration, without specifically naming any defendant, of generally failing to protect plaintiff. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Richardson v. Goord*, 347 F.3d 431,

---

[16] *See Bussey v. Phillips*, 419 F. Supp. 2d 569, 579 (S.D.N.Y. 2006).

435 (2d Cir. 2003). Plaintiff has failed to name any defendant or indicate how supervisory officials were personally involved in any failure to protect him from anything. Accordingly, plaintiff's claim based on failure to protect should be dismissed. *See, e.g.*, *Odom v. New York State Dept. of Correctional Services*, 122 F.3d 1057 (table), 1995 WL 595550, at *2 (2d Cir. 1995) (upholding dismissal of Section 1983 claims based, in part, on the conclusory nature of allegations regarding the personal involvement of certain defendants).

### D.    Conditions of Confinement

In order to state a valid conditions-of-confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter,* 501 U.S. 294, 297–99 (1991) (cited in *Branham v. Meachum,* 77 F.3d 626, 630–31 (2d Cir. 1996)). To satisfy the objective element, the plaintiff must demonstrate that the conditions under which he or she was confined resulted "in unquestioned and serious deprivations of basic human needs." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985) (*citing Rhodes*, 452 U.S. at 347). The Eighth Amendment is implicated for example, "when inmates are denied 'essential food, medical care, or sanitation," or when conditions are such that the threat of violence among inmates

is increased." *Morgan v. Ward*, 699 F. Supp. 1025, 1054 (N.D.N.Y. 1988)

(conditions of confinement in Clinton SHU did not violate Eighth Amendment).

Conditions of confinement are not cruel and unusual for Eighth Amendment

purposes simply because they are "restrictive and even harsh." *Anderson*, 757

F.2d at 35. Rather, many unpleasant aspects of prison life "are part of the penalty

that criminal offenders pay for their offenses against society." *Id*. (citation

omitted). Thus, an inmate who claimed that he was deprived "of his belt, shoe

laces, and personal property for seven days, subjected to 24-hour observation,

placed with mentally ill inmates, denied a change of 'Greens,' and otherwise

subjected to the regulations governing inmates in the MHU" did not establish an

objectively serious deprivation. *Salahuddin v. Dalsheim*, 94 CIV. 8730, 1996 WL

384898, at *14 (S.D.N.Y. Jul. 9, 1996). Significantly, the plaintiff in *Salahuddin*

did not have a mental health designation which would have supported his

confinement in the mental health unit. *Salahuddin*, 1996 WL 384898, at *3.

Here, plaintiff fails to establish that some of the alleged deprivations were

extreme. Plaintiff alleges he lacked writing utensils, paper, grievance forms,

envelopes and was exposed to noisy pipes—these deficiencies do not amount to a

denial of the minimal measure of life's necessities. Plaintiff further alleges he was

extremely cold,[17] had only a short-sleeved green state shirt, no sheets, blanket,

soap, washcloth, pillow, pillowcase, towel, sweatshirt, toothbrush, toothpaste,[18] or

toilet paper[19] for six days.  (*See* Am. Compl. ¶ 30).  Such conditions may have

been unpleasant for plaintiff, but he has failed to allege that the conditions were

---

[17] *See, e.g., Smith v. Burge*, No. 9:03-CV-0955, 2006 WL 2805242 at *7 (N.D.N.Y. Sept. 28, 2006) (confinement of inmate, for less than one day, in a T-shirt and underwear, in a cell with an open window, exposing him to "cold" or "very cold" temperatures, was not sufficiently prolonged or severe to rise to the level of an Eighth Amendment violation); *Borges v. McGinnis*, 03-CV-6375 , 2007 WL 1232227, at *4–6, 2007 U.S. Dist. LEXIS 30865 (W.D.N.Y. Apr. 26, 2007) (keeping inmate, clothed only in paper gown and slippers, with a thin mattress and no blanket, in a room with an open window that reduced the temperature to approximately 50 degrees, for three days, did not meet the objective element of an Eighth Amendment violation); *Grant v. Riley*, 89 Civ. 0359, 1993 WL 485600 at *4, 1993 U.S. Dist. LEXIS 16605 (S.D.N.Y. Nov. 24, 1993) (confining inmate for three days, in an unheated room with a cold wind blowing through a broken window, and denying him a coat, bedding or blankets for over nine hours, failed to allege treatment that offends concepts of dignity, civilized standards, humanity, and decency, as required to state an Eighth Amendment cause of action).

[18] *See, e.g,, Fernandez v. Armstrong*, No. 3:02CV2252, 2005 WL 733664, at *5, 2005 U.S. Dist. LEXIS 4958 (D. Conn. Mar. 30, 2005) (denial of hygiene items including a toothbrush, toothpaste, soap, and shampoo for a period of sixteen days does not allege a violation of Eighth Amendment rights (citations omitted)); *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003)  (holding that "[d]eprivation of . . . toiletries [other than toilet paper] for approximately two weeks–while perhaps uncomfortable–does not pose such an obvious risk to an inmate's health or safety to suggest that the defendants were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that they also drew] the inference.'" (quoting *Farmer*, 511 U.S. at 837); *Chavis v. Kienert*, No. 9:03-CV-0039, 2005 WL 2452150, at *21, 2005 U.S. Dist. LEXIS 41920 (N.D.N.Y. Sept. 30, 2005) (denial of toiletries for a two-month period did not rise to the level of deliberate indifference to the prisoner's health or safety)).

[19] Deprivations of toilet paper for six days, as plaintiff alleges, could be a sufficiently serious deprivation to state an Eighth Amendment claim.  *See Trammell v. Keane*, 338 F.3d at 165 (collecting cases).  However, plaintiff's complaint does not identify who was personally involved in or responsible for this deprivation, so the claim should be dismissed, with plaintiff having an opportunity to amend his allegations.  *See Green v. Bauvi*, 792 F. Supp. 928, 941–42 (S.D.N.Y. 1992) (inmate may recover damages for unconstitutional conditions of confinement only from persons who created or were responsible for those conditions).

wantonly imposed for the unnecessary infliction of pain or that they posed a threat to his health or safety.

Plaintiff alleges that from January 5, 2009, through January 18, 2009, he went "ten days of no food and four days [when plaintiff] was fed one meal a day which [he] refused to eat because they spit in it or put dirt in it." (Am. Compl. ¶¶ 34, 50). The amended complaint implies that claims that defendants Moseley and Besaw were the corrections officers who were responsible for serving breakfast and lunch during this time period.[20] Plaintiff claims that, on January 13, 2009, he complained to defendants Artus and Lavalley that he was not being fed, and they did nothing. (Am. Compl. ¶ 34). The amended complaint also mentions defendants Poupore, Tetreault, Finnell, and Boulrice in the same paragraphs where the food deprivations are discussed, but says nothing about how they were involved. (Am. Compl. ¶¶ 34, 50).

When correction officials deny a prison inmate the measure of food necessary to maintain health, the Eighth Amendment's prohibition against cruel and unusual punishment is implicated. *Robles v. Coughlin*, 725 F.2d 12, 15–16

---

[20] Plaintiff states that he spoke with defendants Moseley and Besaw about his lack of food on January 18, 2009, when he said they "investigated" why the "pink feed-up sheet" indicated plaintiff was on a "restricted diet." (Am. Compl. ¶ 34). Plaintiff claims defendants Moseley and Besaw told plaintiff that he had been placed on a restricted diet in error, and that was when he was "served lunch and [he] ate regular[ly]." (Am. Compl. ¶ 34).

(2d Cir. 1983). "If, on the other hand, meals, are withheld from a prisoner on an isolated basis, such conduct, though not necessarily to be condoned, does not typically rise to a level of constitutional significance." *Cruz v. Church*, 9:05-CV-1067, 2008 WL 4891165, at *12, 2008 U.S. Dist. LEXIS 91022 (N.D.N.Y. Nov. 10, 2008) (citations omitted).

Plaintiff's allegations are far-fetched and conclusory, but are sufficient to state a claim that defendants Moseley, Besaw, Artus, and Lavalley were responsible for denying him food for a sufficiently long period to implicate the Eighth Amendment.   Because plaintiff fails to specify how the other defendants were personally involved in depriving him of meals, the claim should be dismissed against them; but plaintiff should be given the opportunity to amend his complaint.

## V.    Other Claims

Plaintiff claims that correction officers "falsified reports by saying [plaintiff] contaminated [his] cell and cell property and state property and personal property" after plaintiff attempted to assault some corrections officers. (Am. Compl. ¶¶ 35, 51).  Plaintiff alleges that the property in question was confiscated and destroyed.  (Am. Compl. ¶¶ 35, 51).  Plaintiff has failed to state a claim because he has failed to specify which officers falsified the reports and deprived him of his property.  At best, plaintiff may have a claim for the loss of property in

the court of claims.[21]  Plaintiff's claims based on the falsified reports and the destruction of his property should be dismissed.

Plaintiff also alleges the "torts of negligence" in his "preliminary statement."  (Am. Compl. p. 2).  Plaintiff fails to name any defendant or any facts that he alleges constitute negligence, and thus fails to state a claim.  In any event, negligence does not rise to the level of a constitutional claim.  *See Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence is not actionable under section 1983).  To the extent plaintiff asserts a claim based on negligence, it should be dismissed.

## VI.   Qualified Immunity

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  However, even if the constitutional

---

[21] Damage to personal property during random prison searches is not a constitutional claim if an adequate post-deprivation remedy is available.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available").  "'New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action' pursuant to N.Y. Comp. Codes R. & Regs. tit. 7, § 1700.3(b)(4)."  *Davis v. New York*, 311 Fed. Appx. 397, 400 (2d Cir. 2009) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).

privileges are clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991) (citing *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir.1990).

In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 811 (2009) (holding that, "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory in all cases").  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  This court need not address qualified immunity with respect to those of plaintiff's claims which do not state actionable violations of his constitutional rights.

As to plaintiff's deliberate indifference claims against defendants Fitzgerald and Larnan, it was clearly established, as of the time of the alleged incidents in 2008, that inmates had an Eighth Amendment right to be free from deliberate indifference to their medical needs. *See, e.g., Estelle v. Gamble*, 429 U.S. 97

(1976); *Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003).  Thus, accepting plaintiff's allegations as true, qualified immunity cannot protect defendants Fitzgerald and Larnan at this time, because a reasonable person in their position would or should have known that deliberate indifference to medical needs was a constitutional violation.

As to plaintiff's excessive force claims against defendants Uhler, Marcil, and Allen, it was clearly established, as of the time of the alleged incidents in 2008, that inmates had an Eighth Amendment right to be free from excessive force.  *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 9–10 (1991).  Accepting plaintiff's allegations as true, qualified immunity cannot be granted to those defendants at this time, because a reasonable person in their position would or should have known that the use of excessive force was a constitutional violation.

Similarly, it was clear in early 2009 that depriving an inmate of meals for a prolonged period of time constitutes a violation of his Eighth Amendment rights. *Robles v. Coughlin*, 725 F.2d 12, 15–16 (2d Cir. 1983).  Accepting plaintiff's allegations that certain defendants were responsible for denying him meals for more than ten days, those defendants are not entitled to qualified immunity at this time.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. Nos. 69, 98) be **DENIED IN PART**, as to plaintiff's claims based on deliberate indifference to his medical needs as to defendants Fitzgerald and Larnan, as discussed above, and it is further

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. Nos. 69, 98) be **DENIED IN PART**, as to plaintiff's claims based on excessive force as to defendants Uhler, Marcil, and Allen, as discussed above, and it is further

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. Nos. 69, 98) be **DENIED IN PART**, as to plaintiff's claims based on deprivation of meals as to defendants Moseley, Besaw, Artus, and Lavalley, as discussed above, and it is further

**RECOMMENDED**, that defendants' summary judgment motion be **GRANTED IN PART,** and the complaint **DISMISSED WITHOUT PREJUDICE IN ITS ENTIRETY AS TO ALL OTHER DEFENDANTS AND ALL OTHER CLAIMS**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15

(2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

August 27, 2010

Hon. Andrew T. Baxter
U.S. Magistrate Judge

41