**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**RASZELL REEDER,**

                      **Plaintiff,**

     **vs.**                                 **9:09-CV-520**
                                        **(NAM/ATB)**

**MICHAEL HOGAN Commissioner of OMH;**
**BRIAN FISCHER Commissioner of DOCS;**
**RICHARD ROY Inspector General;**
**DALE ARTUS Superintendent;**
**THOMAS LAVALLE 1st Dept. Superintendent;**
**STEVEN RACETTE Dep. Supt. of Security;**
**TARA BROUSSEAU I.G.P. Supervisor;**
**MAUREEN BOSCO Unit Chief;**
**JOANNE WALDRON Unit Chief;**
**KELLY BONNER Mental Health Staff;**
**GREGORY SAVAGE Mental Health Staff;**
**DAVE LUCIA Lieutenant;**
**WILLIAM ALLAN Lieutenant;**
**DONALD UHLER Captain; BENZIO Sergeant;**
**MARCIL Sergeant; KEVIN HICKS Sergeant;**
**LUDWIG Sergeant; JOHN DOE S.H.U. Sergeant;**
**ARCHAMBAULT Sergeant; POURPORE C.O.;**
**TETEAULT C.O.; MOSELEY C.O.; BESAW C.O.;**
**MARTIN C.O.; FINNEL C.O.; R. TRUDEAU C.O.;**
**BOUYEA C.O.; STUART C.O.; MACCOMB C.O.;**
**JOHN DOE O.B.S. Sergeant; JOHN DOE O.B.S. C.O.;**
**JOHN DOE O.B.S. C.O.; JOHN DOE O.B.S. C.O.;**
**JOHN DOE S.H.U. C.O.; JOHN DOE S.H.U. C.O.;**
**JOHN DOE O.B.S. Witness; JOHN DOE O.B.S. Witness;**
**NURSE B. LARNAN; NURSE BOB FITZGERALD;**
**JOHN DOE Dr. of Mental Health;  JANE DOE**
**Director of B.H.U.; HOWARD B.H.U. Sergeant;**
**JOHN DOE Block Mental Health Worker;**
**JOHN DOE M.H.U. Mental Health Worker,**

                        **Defendants.**

---

**APPEARANCES:**                                       **OF COUNSEL:**

Raszell Reeder
94-A-6388
Clinton Correctional Facility

P.O. Box 2001
Dannemora, NY 12929
*Plaintiff, Pro Se*

New York State Attorney General                                           Justin C. Levin, Esq.
The Capitol
Albany, NY 12224
*Attorney for Defendants*

**Hon. Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

Plaintiff, an inmate in the custody of the New York State Department of Correctional

Services ("DOCS"), brought this action under 42 U.S.C. § 1983 alleging that defendants violated

his First and Eighth Amendment rights.  Defendants moved to dismiss the amended complaint

under Fed. R. Civ. P. 12(b)(6).  Upon referral pursuant to 28 U.S.C. § 636(b)(1) and Local Rule

72.3(b), United States Magistrate Judge Andrew T. Baxter issued a Report and Recommendation

recommending that defendants' dismissal motion be granted in part and denied in part.

Magistrate Judge Baxter recommends granting defendants' motion to dismiss the following: (1)

the First Amendment retaliation claim; (2) the First Amendment free exercise of religion claim;

(3) the First Amendment claim that Clinton Correctional Facility's grievance program is

incompetent; (4) the First Amendment mail tampering claim;[1] (5) the Eighth Amendment denial

of mental health treatment at Clinton Correctional Facility; (6) the Eighth Amendment excessive

force claim with respect to the events of July 10, 2008 and July 11, 2008; (7) the Eighth

Amendment failure to protect claim; (8) the Eighth Amendment conditions of confinement claim

with respect to plaintiff's allegations of a cold cell, lack of toiletries, towels, sheets, blanket, and

a sweatshirt; and (9) the destruction of property claim.  Magistrate Judge Baxter recommends

---

[1]Plaintiff has not objected to the dismissal of his mail tampering claim in connection with
the alleged deprivation of Vibe magazine, for which he had a subscription.

denying defendants' motion to dismiss: (1) the Eighth Amendment denial of medical care with respect to defendants Fitzgerald and Larnan; (2) the Eighth Amendment excessive force claim regarding events on July 11, 2008; and (3) the Eighth Amendment conditions of confinement claim with respect to the alleged denial of food during January 2009.  Plaintiff objects to the portions of the Report and Recommendation which recommend dismissal of his claims.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court reviews *de novo* those parts of a report and recommendation to which a party specifically objects.  Where only general objections are filed, the Court reviews for clear error.  *See Brown v. Peters*, 1997 WL 599355,\*2-\* 3 (N.D.N.Y.), *aff'd without op.*, 175 F.3d 1007 (2d Cir. 1999).  Failure to object to any portion of a report and recommendation waives further judicial review of the matters therein.  *See Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993).

**AMENDED COMPLAINT**

There is no objection to the recitation of facts in the Report and Recommendation, which states as follows:

> Plaintiff was at Upstate Correctional Facility ("Upstate") in 2007 and then transferred to Elmira Correctional Facility ("Elmira") in 2008, where he participated in a group therapy program. (Am. Compl. ¶¶ 13–15). After about four weeks, plaintiff was transferred from Elmira to Great Meadow Correctional Facility ("Great Meadow") to participate in a different mental health program. (Am. Compl. ¶¶ 15–16). Plaintiff alleges that upon his arrival at Great Meadow, he was "[i]mmediately harrassed [sic] and retaliated against because of [his] facility history." (Am. Compl. ¶ 16, 39). Plaintiff claims that he has been "deprived [of his] mental health treatment because of constant movement to different facility programs." (Am. Compl. ¶ 18).
>
> While plaintiff was at Great Meadow, defendant Howard allegedly "got [plaintiff] relocated" to the "last cell and with feces in it" and told other correctional officers that when plaintiff was at Upstate, plaintiff had attacked defendant Howard's friend. (Am. Compl. ¶¶ 16, 36, 39, 52). Plaintiff had interacted with defendant Howard at Upstate and Downstate Correctional Facilities. (Am. Compl. ¶ 52). Plaintiff indicates that while he was a part of the Great Meadow B.H.U. program, plaintiff was "given a new criminal charge," but gives no explanation as to the surrounding facts or its relevance. (Am. Compl. ¶ 16).

Plaintiff complained to defendant Hicks at Great Meadow that he was "never suppose[d] to be transfer[r]ed out of Elmira," but "she still did nothing except sent me to Clinton Correctional Facility [group therapy] program" later in 2008. (Am. Compl. ¶ 17). At Clinton, plaintiff "experienced constant assaults [and] wasn't fed for two daily meals[, and w]hile at O.B.S. [plaintiff] was extremely cold and in strong pain." (Am. Compl. ¶ 28). Plaintiff also complains of roaches and mice. (Am. Compl. ¶ 29). Overall, plaintiff asserts that the "threat at Clinton was very threatening it forced [plaintiff] to not want to file any grievances." (Am. Compl. ¶ 29).

Plaintiff alleges that on two occasions he asked for an Imam, and defendant Allen instead sent for a deacon, and plaintiff was also "denied my religious practive [sic] to eat ramadan meals" for the entire month when ramadan is celebrated.  (Am. Compl. ¶ 29, 46). Plaintiff "had to wait patiently and stop writting [sic] grievance[s] until the harrassment, [sic] and constant banging doors, gates and loud noises finally stop." (Am. Compl. ¶ 37).

On July 10, 2008, plaintiff "committed a[n] aggr[a]vated assault charge," and was placed in "full restraints and assaulted in the back of [his] cell" at Clinton by unnamed defendants. (Am. Compl. ¶¶ 20, 40). After the incident, defendant nurse Fitzgerald evaluated plaintiff, but from behind the plexiglass shield in front of plaintiff's cell, which plaintiff alleges was "unclean" and "gives unclear vision." (Am. Compl. ¶26). Plaintiff allegedly received no treatment for his bruises, swelling, or the "excruciating pain [he] was constantly feeling." (Am. Compl. ¶¶ 26–27).

The next day, plaintiff alleges that he was sleeping, and "correction officials entered my cell and placed a green state towel around my head and begin [sic] punching me in my face, my body and they kneed me and kicked me . . . [for] about three minutes. I couldn't see who did it. They told me if I snitch[ed] they [were] going to murder me." (Am. Compl. ¶ 21, 40). An unnamed sergeant and two corrections officers returned a few minutes later and began "punching [plaintiff], kicking [plaintiff], and kneeing [plaintiff]." (Am. Compl. ¶ 22, 40). A third officer stood at the door, holding it open. *Id*. After assaulting plaintiff for another three minutes, they "ran out the cell door." *Id*. Plaintiff alleges that the unidentified corrections officer who held the door also refused to feed plaintiff breakfast and lunch. *Id*.

While plaintiff was still housed in the same cell, he alleges that defendants Uhler, Allen, Marcil, and other corrections officers wanted plaintiff to come out of his cell, but he "disagreed with coming out," because "they did not come with [a] camera." (Am. Compl. ¶ 24, 41). A "distraction unit" was called, bringing a camera, so plaintiff "agreed to come out," but defendants Uhler, Allen, Marcil and others still used mace "repeatedly." *Id*. Plaintiff was placed in full restraints, but the officers failed to lock the cuffs, which caused plaintiff "excruciating pain," and a corrections officer held plaintiff's "arm in an unproffessional [sic] way only intended to cause [plaintiff] extra excruciating pain and he used a[n] untrained hold to apply pressure on my arms and wrist." (Am. Compl. ¶ 24, 42). Plaintiff received an eye examination by defendant nurse Larnan in the SHU "holding pen," but plaintiff received nothing for his bruises, "excruciating pain [he] was constantly feeling," or "swollenness [sic]

-4-

from my head, face, chest, stomach, left leg, right leg and testicles." (Am. Compl. ¶ 27, 43; Pl.'s Resp. to Defs.' Mem. of Law in Supp. of Mot. to Dismiss the Am. Compl. as to Defs. Farnan and Fitzgerald ¶ 1).

On January 5, 2009, plaintiff states that he was "forced to retaliate against a Sgt. and two correction officers for constant harrassment [sic] and constant retaliation . . . and because the administration at Clinton refuse[s] to proffessionally [sic] protect me." (Am. Compl. ¶ 28). The officers then submitted allegedly false reports stating that plaintiff's personal property inside his cell was also contaminated and needed to be destroyed. (Am. Compl. ¶ 51). Plaintiff's property was placed in a bag and destroyed due to a report indicating that it was "contaminated." (Am. Compl. ¶ 35). Plaintiff claims that only "one pair of state pants and short sleeve shirt, one pair of state sox, [sic] one pair of state undershirt and undershorts was contaminated and that was outside my cell at the back of the cell outside cell entrance." (Am. Compl. ¶51).

The state property that was destroyed was valued at $152.64, and plaintiff's property, "five Vibe magazines, 1 bible, 7 personal letters, [and] 1 pair of slippers" were valued at $36.25. (Am. Compl. ¶ 35). The loss of his slippers prevented plaintiff from showering. (Am. Compl. ¶ 35). After plaintiff attempted to assault the officers on January 5, 2009, he claims he was placed "back in S.H.U. 2 cell" that only had a mattress with "huge holes and it was torn in many places." (Am. Compl. ¶ 30). Plaintiff alleges he was deprived of writing utensils, paper, grievances, envelopes, sheets, blankets, washcloths, soap, a pillow or pillowcase, towels, toilet paper, a toothbrush, toothpaste, and a sweatshirt. (Am. Compl. ¶ 30). Plaintiff claims that it took until January 23, 2009, for him "to receive most items back." (Am. Compl. ¶ 30).

For ten days following the January 5, 2009 incident, plaintiff claims he went without food and then only received one meal a day for four more days. (Am. Compl. ¶ 34, 50). Plaintiff refused to eat during the final four days because "they spit in it or put dirt in it." (Am. Compl. ¶ 34). Plaintiff was "denied toilet paper for six days while they offer[ed] to feed me." (Am. Compl. ¶ 47). Plaintiff also felt cold because of a broken window that was not fixed until January 28, 2009. (Am. Compl. ¶ 30, 47). Plaintiff spoke to defendants Artus and Lavalley, but "neither did nothing," telling plaintiff that "it's a security concern." (Am. Compl. ¶ 34, 38, 47). Plaintiff claims that "grievance investigations are not done proffessionally [sic]" or not investigated at all, and defendant Brousseau "neglects her responsibility" as I.G.P. Supervisor by "not using her powers . . . to enforce her authority against Clinton Correctional Facility Administration." (Am. Compl. ¶ 38).

Plaintiff was not included in the group therapy program at Clinton in 2009, which plaintiff alleges is because "the grievance system never conduct proffessional [sic] investigations it has constant incomp[e]tents." (Am. Compl. ¶ 19). Plaintiff asserts that his exclusion from the Clinton group therapy program "has nothing to do with the criminal charge at Great Meadow." *Id*. Plaintiff also claims his mail has been tampered with, because he "never heard from grievance about the grievance [complaining of being denied ramadan meals] and correction officers began stealing my Vibe magazine subscription and it stop coming to me." (Am. Compl. ¶ 37, 53).

Plaintiff also complains of the "loudness of the very loose pipes banging against each other and against the wall," which causes plaintiff an "extreme amount of uneasiness," loss of concentration, and gives him migraine headaches. (Am. Compl. ¶ 31, 48). Plaintiff alleges that his "mental health is constantly worst [sic] and noone [sic] is helping me I have no other choice but to keep throwing feces and looking a[t] the people that walk bye [sic] that's [sic] responsible for not fixing these constant attacks when they were warned repeatedly. My brain be [sic] getting angry." (Pl.'s Resp. to Defs.' Mot. to Dismiss Compl. p. 11).

Additionally, corrections officers allegedly "bang at the back of [plaintiff's] cell [on the] plexiglass that is called a bus stop[,] it's put there for disciplinary reasons." (Am. Compl. ¶ 32, 49). Plaintiff claims these "attacks" are retaliation for the July 10, 2008, July 11, 2008, and the January 5, 2009, incidents. (Am. Compl. ¶ 32). These incidents allegedly disturb plaintiff, make it difficult for him to sleep, constitute an invasion of his privacy, anger him, and were a contributing factor that "caused plaintiff to attack on 1/5/09 forcing Clinton administration to take notice to the abuse they pretend doesn't exist." (Am. Compl. ¶ 32). Plaintiff lists six occasions on February 6, 2009, and nine occasions from February 8, 2009, to February 16, 2009, when corrections officers were "banging" on the plexiglass at the end of his cell. (Am. Compl. ¶ 32). Plaintiff claims these types of activities "took place for . . . close to six months." (Am. Compl. ¶ 45).

Plaintiff seeks a judgment in his favor, including substantial compensatory and punitive damages. Plaintiff included three main headings in his fact section followed by a largely repetitive section entitled "claims for relief." (Am. Compl. p. 15).

## DISCUSSION

### Standard

To survive a dismissal motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See ATSI*, 493 F.3d at 98. A complaint should be "especially liberally construed when it is submitted *pro se* and alleges civil rights violations." *See Jacobs v. Mostow*, 271 Fed.Appx. 85, 87 (2d Cir.

2008) (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)).  The submissions of a *pro se* litigant should be interpreted "to raise the strongest arguments that they suggest."  *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations omitted).

**First Amendment**

***Retaliation***

To state a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must allege that: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (3) the defendant's actions effectively chilled the plaintiff's exercise of his rights.  *See Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998). Additionally, a prisoner has a substantive due process right, actionable under § 1983, not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of his grievances.  *See Jones v. Coughlin*, 45 F.3d 677, 679-680 (2d Cir. 1995).  However, "a complaint of retaliation that is wholly conclusory can be dismissed on the pleadings alone." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

In this case, although plaintiff states that he submitted numerous grievances to prison officials, to which he received no response, even construing his complaint liberally, plaintiff claims that defendants retaliated against him, not because of his grievances, but rather, because he attempted to assault several correctional officers on January 5, 2009.[2]  (¶ 35).  As Magistrate Judge Baxter explained, because attempting to assault correctional officers is not protected

---

[2]As Magistrate Judge Baxter indicates, in the amended complaint, plaintiff also alleges that defendant Howard told "officers" that plaintiff had previously attacked defendant Howard's friend and that, as a result, plaintiff was attacked.  Plaintiff also references "retaliation" elsewhere in the amended complaint.  These references, like the allegation regarding defendant Howard, are vague and indecipherable.  Thus, without more specific allegations, the references to "retaliation" do not state a claim on which relief can be granted.

conduct under the First Amendment, plaintiff fails to state a claim of retaliation.  Accordingly,

the Court accepts Magistrate Judge Baxter's recommendation that plaintiff's claim of retaliation

be dismissed.

### *Free Exercise*

Here, the magistrate judge found that even assuming plaintiff's allegations that he did not

receive proper meals during Ramadan were sufficient to implicate the free exercise clause of the

First Amendment, plaintiff failed to indicate which defendants were responsible for the alleged

deprivation.  Plaintiff objects.  In the amended complaint, plaintiff states that he wrote a

grievance "about me not receiving ramadan meals that caused me to speak verbally to grievance

Sgt. Archambault he said they have my grievance but I never heard from grievance about the

grievance."  Am. Complaint ¶ 37.  This allegations sufficiently alleges that defendant

Archambault was aware of both plaintiff's complaint that he was not receiving proper meals

during Ramadan and plaintiff's grievances to that effect, but failed to act.  Accordingly, the

Court finds that the amended complaint states a claim that plaintiff's First Amendment right to

the free exercise of religion was violated.

### *Grievances*

Magistrate Judge Baxter recommends the dismissal of plaintiff's claim that defendants

repeatedly violated the grievance process at Clinton Correctional Facility by ignoring his

grievances and failing to conduct proper investigations.  Plaintiff objects.  "[I]nmate grievance

programs created by state law are not required by the Constitution and consequently allegations

that prison officials violated those procedures does not give rise to a cognizable § 1983 claim."

*Shell v. Brzezniak*, 365 F. Supp.2d 362, 370 (W.D.N.Y. 2005).  Accordingly, the Court accepts

the Report and Recommendation and plaintiff's general claim regarding grievances at Clinton is

dismissed.

**Eighth Amendment**

*Denial of Medical Care*

Magistrate Judge Baxter recommends denial of defendants' motion to dismiss plaintiff's

claim that he was denied medical care by defendants Fitzgerald and Larnan, nurses at Clinton

Correctional Facility on July 10, 2009 and July 11, 2009.  With respect to plaintiff's allegation

that defendants deprived him of mental health treatment at Clinton, however, Magistrate Judge

Baxter recommends dismissal on the ground "plaintiff was getting mental health treatment in the

different facilities in which he is housed."  Thus, the magistrate judge concluded, plaintiff's

allegation of deprivation was "conclusory" and "disingenuous".  Plaintiff objects to dismissal of

this claim.

Plaintiff specifically states in the amended complaint that although he was transferred to

Clinton to participate in the mental health treatment program in 2008, as of the time of filing of

this case in 2009, he had not been included in this program.  In connection with this allegation,

plaintiff "accuse[s] Michael Hogan, Brian Fischer, Maureen Boscu and Joanne Waldron.  They

[sic] responsible for the G.T.P. program at Clinton".  Am. Complaint ¶ 19.  Plaintiff also

identifies defendants Roy, Artus, Lavalle, Racette in connection with this claim.  The Court finds

that these allegations sufficiently state a claim for denial of medical treatment and identify the

defendants allegedly involved.

*Excessive Force*

According to the amended complaint, there are three separate incidents for which

plaintiff seeks relief.  First, plaintiff alleges that on July 10, 2008, "I was placed in full restraints

and assaulted in the back of my cell at Clinton Correctional Facility."  Plaintiff further states that

Hogan, Boscu, and Waldron "is [sic] responsible" (Am. Compl. ¶ 20) and that one "John Doe"

S.H.U. Sergeant and two "John Doe" S.H.U. Correction Officers (A. Compl. ¶ 40).  Second,

-9-

plaintiff alleges that on July 11, 2008, he was sleeping in his cell when "correction officials entered my cell and placed a green state towel around my head and bing[sic] punching me in my face, my body and they kneed me and kicked me" for "about three minutes."  Plaintiff states that he "couldn't see who did it."  Third, plaintiff alleges that later on July 11, 2008, officers Uhler, Allen, Marcil, and O.B.S. Sergeant "John Doe" used mace against him to harm him.  The magistrate judge recommends denying defendants' motion to dismiss the third claim, finding that it successfully states a claim and identifies the defendants allegedly involved.  The magistrate judge, however, recommends dismissal of the first and second claims of excessive force on July 10, 2008, and July 11, 2008 on the ground that amended complaint fails to identify the defendants' involved.  Plaintiff objects to dismissal of these claims and requests permission to amend the complaint following discovery, through which he expects to learn the names of the individuals directly involved as well as those whom he believes failed to protect him.  In light of plaintiff's request, and because no discovery has been conducted, defendant's motion to dismiss plaintiff's excessive force claims is denied without prejudice.  If, however, after discovery, plaintiff fails to identify the John Doe defendants who allegedly subjected him to excessive force, these claims will be dismissed.

### *Conditions of Confinement*

Plaintiff objects to the finding in the Report and Recommendation that the amended complaint fails to state a valid "conditions of confinement" claim[3] with respect to the denial of toiletries, including toilet paper, writing utensils, paper, grievance forms, envelopes, and placement in a cell with a broken window and no heat, blanket, or warm clothing from January 5, 2009 through January 28, 2009.  According to the amended complaint, plaintiff complained to

---

[3]There is no objection to the finding in the Report and Recommendation that the amended complaint sufficiently alleged a "conditions of confinement" claim with respect to the deprivation of food during the same time period.

defendants Ludwig, Artus, Lavalle and Savage about these conditions, but "they disagreed".

The Court finds the amended complaint sufficiently alleges a "conditions of confinement" claim.

Deprivation of toiletries, "especially toilet paper, can rise to the level of unconstitutional

conditions of confinement." *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003).  Deprivation

of the basic human need of warmth can also constitute an Eighth Amendment violation. *See,*

*e.g., Benitez v. Straley*, 2006 WL 5400078, *13 (S.D.N.Y. Feb. 16, 2006); *Moore v. Gardner*,

199 F.Supp.2d 17, 36-38 (W.D.N.Y. 2002).  Accordingly, defendants' motion to dismiss the

"conditions of confinement" claim is denied.

Plaintiff objects to the dismissal of the portion of the amended complaint which alleges

that he is subject to unconstitutional "conditions of confinement" because of the loudness of the

pipes banging against each other in the facility.  Plaintiff alleges that "[g]rievance said it will be

monitored closely" but states that "defendants are still taking to[o] long to respond to it being

fixed."  Paragraph 31 of the amended complaint, however, does not identify the defendants

involved.  Accordingly, this claim is dismissed without prejudice to filing an amended complaint

identifying the defendants allegedly responsible.

### *Other Claims*

Plaintiff objects to the dismissal of the claim in the amended complaint that defendants

unconstitutionally deprived him of his personal property.  However, as the magistrate judge

correctly noted, "'New York in fact affords an adequate post-deprivation remedy in the form of,

*inter alia*, a Court of Claims action' pursuant to N.Y. Comp.Codes R. & Regs. tit. 7, §

1700.3(b)(4)." *Davis v. New York*,  311 Fed.Appx. 397, 400, 2009 WL 424151, *2 (2d Cir.

2009) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)).  This "adequate

post-deprivation state remedy would thus preclude [the plaintiff's] due process claim under §

1983 even if he had exhausted his administrative remedies." *Id*.  Accordingly, defendants'

-11-

motion to dismiss plaintiff's claim that defendants unconstitutionally deprived him of his personal property, is granted.

**Qualified Immunity**

There is no objection to the magistrate judge's finding that qualified immunity does not apply to plaintiff's Eighth Amendment claims at this point.  Further, it is well established that a prisoner has a First Amendment right to keep a diet consistent with his religious beliefs.  *See Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) ("We . . . have clearly established that a prisoner has a right to a diet consistent with his or her religious scruples") (citing *Kahane v. Carlson*, 527 F.2d 492 (2d Cir. 1975); *Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992)).  Accordingly, defendants' motion to dismiss on grounds of qualified immunity is denied.

**CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the Report and Recommendation is Accepted with regard to the recommendation that defendants motion to dismiss the First Amendment retaliation claim, grievance claim, deprivation of personal property claim be Granted, and it is further

**ORDERED** that the Report and Recommendation is Accepted with regard to the recommendation that defendants' motion for dismissal on grounds of qualified immunity be Denied; and it is further

**ORDERED** that defendants' motion to dismiss the First Amendment retaliation claim, grievance claim, and deprivation of personal property claim is Granted; and it is further

**ORDERED** that the Report and Recommendation is otherwise Rejected; and it is further

**ORDERED** that defendants' motion to dismiss is otherwise Denied.

**IT IS SO ORDERED.**

Dated: September 29, 2010
        Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge