UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RASZELL REEDER,

                       Plaintiff,

 v.                                                            9:09-CV-520
                                                                   (NAM/ATB)

M. HOGAN, et al,

                               Defendants.
_____

RASZELL REEDER, Plaintiff, pro se
JUSTIN C. LEVIN, Assistant Attorney General

ANDREW T. BAXTER, United States Magistrate Judge

## **REPORT AND RECOMMENDATION**

**I.    Background**

Plaintiff commenced this action pro se, seeking damages for injuries resulting from various incidents occurring between 2007 and 2008. (Dkt. No. 1). Liberally construed, plaintiff's original complaint set forth several First and Eighth Amendment claims, including excessive force, denial of medical care, failure to receive proper Ramadan meals, and challenges to his conditions of confinement. *Id.*

On November 16, 2009, defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 69). While defendants' motion to dismiss was pending, plaintiff filed an amended complaint ("First Amended Complaint") on January 4, 2010. (Dkt. No. 84). Although the motion to dismiss was filed prior to the First Amended Complaint, the only amendment to the original

complaint was the addition of two named defendants in place of two of the John/Jane Doe defendants. The new defendants requested that they be allowed to join the pending motion to dismiss. (Dkt. Nos. 72, 87). The court granted these requests. (Dkt. Nos. 77, 88).

On September 29, 2010, then-Chief District Judge Mordue granted defendants' motion in part and denied it in part. (Dkt. No. 122). On October 8, 2010, this action was referred to Magistrate Judge Victor E. Bianchini for settlement proceedings, pursuant to the Pro Se Prisoner Settlement Program, and the case was stayed in all other respects until the proceedings were completed. (Dkt. No. 124).

On November 1, 2010, plaintiff filed a motion to amend, together with a Second Amended Complaint. (Dkt. No. 129). In light of the stay, the Court did not address the motion. On January 31, 2011, the stay was lifted. (Dkt. No. 133). Before this Court could address plaintiff's November 1, 2010 motion, plaintiff filed another motion to amend on May 4, 2011, together with a Third Amended Complaint. (Dkt. No. 141). In an order dated June 22, 2011, this court denied plaintiff's motion to amend filed on May 4, 2011, but granted, in part, the November 1, 2010 motion. (Dkt. No. 145). The operative pleadings were then plaintiff's First Amended Complaint, filed January 4, 2010, without the claims that were dismissed as a result of Judge Mordue's September 29, 2010 Order, read together with plaintiff's Second Amended Complaint. Defendants filed a motion for summary judgment on December 27, 2011.

(Dkt. No. 150). Plaintiff filed a response on January 9, 2012. (Dkt. No. 154).

On September 19, 2012, Judge Mordue granted defendants' motion for summary judgment (Dkt. No. 150), and all claims against all defendants were dismissed except for plaintiff's claim based on excessive force against defendant Allan, which was denied without prejudice to defendant Allan filing another summary judgment motion (Dkt. No. 161). On October 19, 2012, defendant Allan filed his motion for summary judgment. (Dkt. No. 162). Plaintiff opposed the motion. (Dkt. No. 165).

## II.  **Facts and Contentions**

Plaintiff alleges that on August 25, 2008, defendants Uhler, Allen, Marcil, and other correction officers wanted plaintiff to come out of his cell, but he "disagreed with coming out," because "they did not come with [a] camera." (First Am. Compl. ¶ 24, 41). A "distraction unit" was called, bringing a camera, so plaintiff "agreed to come out," but defendants Uhler, Allen, Marcil and others still used mace "repeatedly." *Id.* Plaintiff was placed in full restraints and escorted to the SHU. (First Am. Compl. ¶ 24–25; Pl.'s Dep. 109–12 (Dkt. No. 162-3)).

For the reasons below, the court recommends granting defendant's motion and dismissing plaintiff's complaint in its entirety.

## III.  **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of

3

showing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment." *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987) (citation omitted). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56 (c)(1)(A). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48.

IV. **Excessive Force**

Plaintiff alleges that various correction officers and a "distraction" unit used excessive force against him on August 25, 2008.

A. **Legal Standards**

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency.'" *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9. "[T]he malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth

Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10 (citations omitted). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

B. **Application**

Plaintiff claims that on August 25, 2008, Sergeant Rendle told plaintiff to get

dressed so he could return to his cell in the Special Housing Unit ("SHU"). (Pl.'s Dep. 101) (Dkt. No. 162-3). Plaintiff said that he and Sergeant Rendle exchanged "disrespectful statements," and he told Sergeant Rendle, "The door is locked, but when I catch you, you know I'm going to hurt you." (Pl.'s Dep. 101–02). Because plaintiff refused to comply with direct orders, it was apparent that plaintiff was not going to voluntarily leave his cell, and an extraction team was called.

Sergeant Rendle's report states that when he returned to plaintiff's cell with the extraction team, plaintiff was standing in his cell with something in his right hand. (Dkt. No. 162-9 at 18). Sergeant Rendle ordered plaintiff several times to drop what he was holding in his hand, after which plaintiff threw it against the door of the cell and retrieved what appeared to Sergeant Rendle to be feces from the toilet. *Id.* Sergeant Rendle's report indicates that plaintiff continued to refuse to comply with direct orders. *Id.* In an effort to subdue plaintiff so he could be removed from his cell, the extraction team used chemical agents. *Id.* Even after the chemical agents were used, plaintiff refused to comply, so the extraction team entered and restrained plaintiff. *Id.*

Plaintiff disputes the reason why the extraction team came to his cell on August 25, 2008, and claims that he complied with instructions and stood with his back to the door so he could be handcuffed. (Pl.'s Dep. 103–04). Plaintiff claims that Sergeant

Rendle started spraying mace at plaintiff without provocation or warning. (Pl.'s Dep. 104–05). Plaintiff claims that when the members of the extraction unit told him to get on the floor, he complied. (Pl.'s Dep. 105–07). Plaintiff testified that after he was handcuffed, no more mace was sprayed. (Pl.'s Dep. 117). The chemical agent affected plaintiff's eyes and his breathing, and within one minute he was taken to the decontamination shower, and within seven minutes, the effects from the chemical agent were gone. (Pl.'s Dep. 113, 115). Plaintiff claims that defendant Allan is responsible for the use of excessive force against him on August 25, 2008. The other officers on the extraction team are not defendants in this action.[1]

Defendant Allan was one of the lieutenants in charge of the Correction Emergency Response Team (CERT) at Clinton in August 2008. (Dkt. No. 162-9 at 1–2). The record contains a declaration by defendant Allan, who affirmed that he was called to plaintiff's cell on August 25, 2008, and he attempted to convince plaintiff to comply with orders to exit his cell so he could be escorted back to the SHU. (Dkt. No. 162-9 at 2). Defendant Allan affirmed that plaintiff continued to ignore orders to exit his cell, and defendant Allan then ordered Sergeant Rendle to use force to extract plaintiff from his cell. Sergeant Rendle sprayed two one-second bursts of chemical

---

[1] The Use of Force Report dated August 25, 2008, indicates that R. Rendle, M. Chagnon, N. Moore, E. Owen, and T. Saunders assisted on the extraction team, none of whom were named as defendants in this action. (Dkt. No. 162-9 at 11, 14).

agents a total of five times at plaintiff. (*Id.*). Defendant Allan affirmed that even after the chemical agents were sprayed, plaintiff still would not exit his cell. (*Id.*). The extraction team then entered plaintiff's cell and using body holds, placed plaintiff in restraints and escorted him to the decontamination shower. (*Id.*). Plaintiff was escorted to the SHU, where he was examined by defendant Nurse Farnan, who found no injuries. (Dkt. No. 162-9 at 15).

Defendant Allan submitted a video of the cell extraction that occurred on August 25, 2008.[2] (Dkt. No. 159). The video is approximately 30 minutes long and documents the cell extraction team at plaintiff's cell through when he arrives at his new cell. (*Id.*). The video depicts that when the extraction team arrives at the cell, plaintiff is given one last direct order to exit the cell, and he is told to come to the front of the cell so he can be handcuffed through the food slot. (*Id.* at 2:32:30). Plaintiff approaches the door to the cell, and one of the extraction team asks what is in plaintiff's hand. (*Id.* at 2:32:47). Plaintiff is repeatedly told to drop what he has in his hand. (*Id.* at 2:32:48, 50, 52, 55). At that point, plaintiff backs away from the door

---

[2] The court may rely on the video of the relevant events in concluding that no reasonable fact finder could credit the plaintiff's inconsistent claims about the incident. *See, e.g.*, *Kalfus v. New York and Presbyterian Hosp.*, 476 F. App'x 877, 880–81 (2d Cir. 2012) (the video demonstrated that plaintiff resisted arrest by refusing to stand up or be handcuffed, and that the patrolmen used only reasonable force to overcome his resistance; no reasonable fact finder could conclude that defendants applied excessive force); *Green v. Morse*, 00–CV–6533, 2009 WL 1401642, 2009 U.S. Dist. LEXIS 42368, at *27 (W.D.N.Y. May 18, 2009) (this court may rely on the video evidence clearly showing that some use of force was necessary to grant summary judgment and dismiss plaintiff's excessive force claim) (citations omitted).

9

and goes to the floor. (*Id.* at 2:32:54). He is again told repeatedly to drop what he has in his hand (*Id.* at 2:32:58; 2:33:00, 04, 06, 09, 22, 24, 30, 54, 55, 56; 2:34:11, 22, 39, 42, 50), and get away from the toilet (*Id.* at 2:34:37; 2:35:08, 11, 29, 32). A member of the team is heard to remark, "He almost got you that time," apparently in reference to plaintiff throwing material at the cell door. (*Id.* at 2:35:05). After plaintiff is subdued by the extraction team, the camera pans over the door, showing where what appears to be feces have been thrown at the door. (*Id.* at 2:36:49–53). The camera also shows a toilet that has been used, but not flushed. (*Id.* at 2:36:55–57).

The video corroborates that when plaintiff approached the door, he was not complying with orders, but instead had what was apparently feces in his hand. When he was asked to drop what he was holding, plaintiff moved away from the door. Defendant Allan authorized the use of chemical agents to subdue plaintiff, allowing the extraction team to enter his cell and restrain him. Plaintiff was repeatedly warned and refused to comply with the guards' orders. He then escalated his defiance by throwing feces at the door of his cell.

No reasonable finder of fact would credit plaintiff's claims that he was compliant with orders to exit his cell peacefully. Defendant Allan did not authorize the use of force to subdue plaintiff without provocation. The defendants used necessary force to restore discipline and subdue plaintiff, who was aggressively

refusing to comply with orders. In addition, defendants' actions indicate that their use of chemical agents was in response to the perceived threat that plaintiff aggressively refuse to comply. Defendants have shown that there is no issue of fact as to either of the elements of an Eighth Amendment violation. Accordingly, the claim against defendant Allan should be dismissed. *See, e.g., Alston v. Butkiewicus*, No. 3:09-CV-207, 2012 WL 6093887, 2012 U.S. Dist. LEXIS 173770, at *40–42 (D. Conn. Dec. 7, 2012) (use of chemical agent did not constitute excessive force when inmate refused to comply with direct orders); *Carolina v. Pafumi*, No. 3:12-cv-163, 2013 WL 1673108, 2013 U.S. Dist. LEXIS 55209, at *8–12 (D. Conn. April 17, 2013) (use of chemical agent to subdue noncompliant inmate did not constitute excessive force); *Green v. Morse*, 2009 U.S. Dist. LEXIS 42368, at *38, 42 (use of chemical agent on noncompliant inmate did not constitute excessive force).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's summary judgment motion (Dkt. No. 162), be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

11

**APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 17, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge